# CASE NO. 13-1311

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

| | |
|---|---|
| KAREN SCAVETTA, | ) |
| | ) |
| Plaintiff - Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| DILLON COMPANIES, INC., | ) |
| d/b/a King Soopers, Inc., | ) |
| | ) |
| Defendant - Appellee. | ) |

---

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge William J. Martinez
D.C. No. 1:10-cv-02986-WJM-KLM

---

## APPELLANT'S OPENING BRIEF

---

Respectfully submitted,

Marc. L. Schatten
The Schatten Law Firm
1439 Court Place
Denver, CO 80202
303-388-3200
mls@denverlawfirm.com

Oral Argument is requested.
SCANNED PDF ATTACHMENTS ARE INCLUDED

January 6, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………………iv

PRIOR OR RELATED APPEALS……………………………………………..…vi

STATEMENT OF JURISDICTION………….………………………………………1

STATEMENT OF THE ISSUES…………………….…………………………………1

STATEMENT OF THE CASE………………….…………………………………………1

STATEMENT OF THE FACTS……………………………………………………...4

    A. Ms. Scavetta's Employment as a King Soopers' Pharmacist……..……..4

    B. Ms. Scavetta Seeks an Exemption from Giving Immunizations due to her Rheumatoid Arthritis……………………………………………………...6

    C. The Termination of Ms. Scavetta…………………………………...8

    D. The Major Life Activity Instruction………………………………11

SUMMARY OF THE ARGUMENT…………………………………………..14

LAW AND ARGUMENT……………………………………………….…17

    A. Standard of Review……………………………………………..17

    B. The District Court Committed Reversible Error Concerning the Reasonable Accommodation Claim Because it Failed to Properly Instruct the Jury on the Major Life Activities……………………..………………17

C.  The District Court Committed Reversible Error Concerning the Retaliation Claim Because it Failed to Properly Instruct the Jury on the Major Life Activities…………………………………………………………………..24

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT……………………25

CONCLUSION…………………………………………………………......…….26

Certificate of Compliance……………………………………….…..……………27

CERTIFICATE OF DIGITAL SUBMISSION…………….…………….…….…..28

CERTIFICATE OF SERVICE………………………………………………………29

ATTACHMENTS:

*Karen Scavetta v. Dillon Companies, Inc.*, 1:10-cv-02986-WJM-KLM,
    Judgment……………………………………………………….............1

*Karen Scavetta v. Dillon Companies, Inc.*, 1:10-cv-02986-WJM-KLM,
    Verdict Form…………………………………………………….…..3

*Karen Scavetta v. Dillon Companies, Inc.*, 1:10-cv-02986-WJM-KLM,
    Transcript of Jury Instruction Conference…………………………...6

# TABLE OF AUTHORITIES

## CASES

*Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1144 (10th Cir. 2011)…..18

*Doebele v. Sprint*, 342 F.3d 1117, 1129 (10th Cir. 2003)…………………….……20

*Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1079 (10th Cir. 2010)………..…..17

*Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009)…………………….……17

*Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 188 n.17 (3d Cir. 2009)…….18

*Latham v. Bd. of Ed.*, Fed. Appx. 239 (10th Cir. 2012)………………..………….18

*Lederman v. Frontier Fire Prot.,* 685 F.3d 1151, 1154 (10th Cir. 2012)……..17, 23

*Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009)………………..…17

*United States v. Barrera-Gonzales*, 952 F.2d 1269, 1272 (10th Cir.1992)………..17

*Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 867 (10th Cir. 2003)…………22, 25

## STATUTES

28 U.S.C. § 1331……………………………………………………………...1

28 U.S.C. § 1291……………………………………………………………...1

42 U.S.C. §12101 *et seq*…………………………………………………………3, 12, 13, 17-20

## OTHER

29 C.F.R. part 1630, Appx……………………………………………..……...19

Federal Rule of Appellate Procedure, Rule 4(a)(1)………………...…………1

Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions*, § 172.35 (5th ed. 2001)……………………………………12-13

Pub. L. 110-325……………………………………………………..…...18

## PRIOR OR RELATEDS APPEALS

None.

The Schatten Law Firm, by undersigned counsel, on behalf of Karen Scavetta, Plaintiff-Appellant for her opening brief states:

## STATEMENT OF JURISDICTION

The United States District Court for the District of Colorado had jurisdiction over this matter, brought under federal law, pursuant to 28 U.S.C. § 1331.  At trial, the jury found against Plaintiff on her two claims: (1) failure to provide reasonable accommodation under the ADA, and (2) retaliation for engaging in protected activity.  The District Court entered a final judgment against Plaintiff on June 22, 2013.  (Aplt. App. Vol. I at 250) (*Attachment 1*).  The notice of appeal was timely filed in accordance with Rule 4(a)(1), F.R.A.P., on July 22, 2013.  (Aplt. App. Vol. I at 252).  This Appellate Court's jurisdiction derives from 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

CONCERNING THE FAILURE TO ACCOMMODATE CLAIM, DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR IN REFUSING TO INSTRUCT THE JURY THAT MAJOR LIFE ACTIVITIES INCLUDED THE OPERATION OF THE IMMUNE SYSTEM AND THE OPERATION OF THE MUSCULOSKELTAL SYSTEM.

CONCERNING THE RETALIATION CLAIM, DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR IN REFUSING TO INSTRUCT THE JURY THAT MAJOR LIFE ACTIVITIES INCLUDED THE OPERATION OF THE IMMUNE SYSTEM AND THE OPERATION OF THE MUSCULOSKELTAL SYSTEM.

## STATEMENT OF THE CASE

Plaintiff brought this employment case in federal court against her former employer Dillon Companies, Inc. a/k/a King Soopers, Inc.  Plaintiff filed her case on December 9, 2010, raising claims for: (1) denial of reasonable accommodation, (2) violation of the Age Discrimination in Employment Act, (3) retaliation for engaging in protected activity, (4) wrongful termination in violation of public policy, and (5) outrageous conduct.  (Aplt. App. Vol. I at 17-29).  On January 15, 2011, Plaintiff filed her amended complaint, setting forth claims for: (1) denial of reasonable accommodation, (2) disparate treatment and unlawful termination, (3) violation of the Age Discrimination in Employment Act, (4) retaliation for engaging in protected activity, (5) wrongful termination in violation of public policy, and (6) outrageous conduct.  (Aplt. App. Vol. I at 32-44).  The District Court granted in part and denied in part Defendant's motion for summary judgment (Aplt. App. Vol. I at 46). Specifically, the Court dismissed Plaintiff's age discrimination and state common law outrageous conduct claims on summary judgment, but allowed the remaining claims to proceed to trial.  *Id.* at 63.

At trial, Plaintiff voluntarily dismissed her state wrongful discharge claim and federal ADAAA discrimination claim.  (Aplt. App. Vol. II at 879, Vol. III at 997).  The jury was left to resolve Plaintiff's final two claims: (1) failure to provide reasonable accommodations under the ADAAA in violation of 42. U.S.C. § 12112(b)(5)(A), and (2) retaliation against Plaintiff for engaging in protected

2

activity in violation of 42 U.S.C. 12204(a).  The jury found against Plaintiff on both claims.  (Aplt. App. Vol. I at 247-48).

Plaintiff had worked at King Soopers for thirty years including working for fifteen years as a pharmacist. At trial, Plaintiff presented testimony and medical evidence from her rheumatologist Vance Bray, M.D. that she had been diagnosed with rheumatoid arthritis that substantially impairs her immune system and muscular-skeletal system. (Aplt. Aplt. Vol. II at 603-05; 614-616).  Because of the debilitating strength in the fingers and thumb that resulted from the disease, in 2008 and 2009, Dr. Bray issued medical orders directing Ms. Scavetta not to give immunizations to King Soopers' customers.  (Aplt. App. Vol. IV at 356; Vol. IV at 1128-29).

King Soopers' Labor Relations Manager admitted that Plaintiff's medical restrictions which prohibited her from giving immunizations triggered the interactive process. (Aplt. App. Vol. II at 711-12). Yet, on October 2, 2009, King Soopers decided that Ms. Scavetta would not be exempted from giving immunizations. (Aplt. App. Vol. IV at 1130).  On October 4, 2009, a store manager gave a direct order to Ms. Scavetta to give the immunizations, otherwise she would be fired. (Aplt. App. Vol. I at 365).  She refused to give the immunizations. (*Id.*) Consequently, she was suspended and then terminated two days later on October 6, 2009. (Aplt. App. Vol. I at 368-74; IV at 1131-32).

The District Court instructed the jury on the issue of major life activities that it was limited to performing manual tasks, walking, standing, and working. (Aplt. App. Vol. III at 782). Plaintiff objected that this instruction failed to comport with the ADAAA that substantially expanded the definition of major life activities, and should include here the operation of the immune system and the musculoskeletal system as major life activities based on the medical evidence from Dr. Bray. (Aplt. App. Vol. III at 1117-18). The District Court overruled Plaintiff's objection and refused to instruct the jury that the major life activities included the operation of the immune system and musculoskeletal system. *Id.* The jury found against Plaintiff on both of her claims. (Aplt. App. Vol. I at 247-48). The District Court then entered a final judgment against Plaintiff. (Aplt. App. Vol. I at 250).

## STATEMENT OF THE FACTS

A.    Ms. Scavetta's Employment as a King Soopers' Pharmacist

Ms. Scavetta worked at King Soopers for thirty years. She started in 1979 as a courtesy clerk and was promoted to pharmacy technician. (Aplt. App. Vol. I at 299-300). During her employment, she also enrolled and ultimately completed a Bachelor of Science Degree at the University of Colorado. (Aplt. App. Vol. I at 302-303). After her graduation, in 1994, she became a licensed pharmacist at King Soopers. (Aplt. App. Vol. I at 303, 318). She worked as a pharmacist for fifteen years until her termination in October 2009. (Aplt. App. Vol. I at 315). At the time

of her termination, she was working as a floater pharmacist rotating between thirteen stores. (Aplt. App. Vol. I at 338, Vol IV. At 1131-33).

Ms. Scavetta earned generally high to outstanding scores in her performance evaluation and secret shopper awards. (Aplt. App. Vol. I at 321-26).  Importantly, she was generally able to perform all of the essential duties and functions of a pharmacist including providing customer service, filling prescriptions in compliance with applicable federal and state laws and regulations, counseling customers on nonprescription remedies, counseling and advising patients concerning medication and contraindications, contacting physicians concerning the medications and authorizations, ordinary business attendance, interpersonal skills required to interact with guests and coworkers, filling prescription orders accurately, evaluating prescription orders for patient safety, maintaining accurate records, becoming familiar with third-party billing procedures and the computer prescription system. (Aplt. App. Vol. I at 304 – 315).

During or about 2006, King Soopers began a program in which pharmacists could administer immunizations (flu shots and other vaccines) to customers. The program was initially voluntary for the pharmacists to enroll. (Aplt. App. Vol. I at 326).[1]

---

[1]	On January 21, 2010, after the October 2009 termination of Karen Scavetta, King Soopers entered into a Letter of Agreement resolving grievances brought by the Union USW Local 920 as it determined that pharmacists were now expected to give immunizations unless they were previously exempted by the company. (Aplt. App. Vol. IV at 1135).

In June, 2007, Ms. Scavetta completed a training program to give immunizations. (Aplt. App. Vol. IV at 1121). And, in 2007, she began giving immunizations. (Aplt. App. Vol. I at 331).

B.     Ms. Scavetta Seeks an Exemption from Giving Immunizations due to her Rheumatoid Arthritis

King Soopers maintained practices to enable pharmacists to be exempted from giving immunizations. The company had exempted at least ten other pharmacists from giving immunizations. (Aplt. App. Vol. II at 726-728, 732; Vol. IV at 1136-37).

Since 1999, Karen Scavetta had treated with Vance Bray, M.D. at the Denver Arthritis Clinic. (Aplt. App. Vol. I at 333). Dr. Bray is board certified in internal medicine and rheumatology and was admitted as an expert at trial in those medical fields. (Aplt. App. Vol. II at 602-03).

Dr. Bray testified that Ms. Scavetta suffers from rheumatoid arthritis. (Aplt. Aplt. Vol. II at 614-616).  Dr. Bray explained the damaging impact of the disease on the patient's immune system and the bones and joints in the musculoskeletal system:

> Rheumatoid arthritis is a disorder of the immune system. So normally the immune system helps the body fight infections or heal from injuries. But in this case, the immune system starts attacking the joints and other organs. As a result of that, the joints become painful and swollen. There's a potential for the joints to be permanently damaged causing crippling, disfigurement. Along with this, patients typically have a lot of pain, stiffness, and

fatigue. There is a potential for these patients to end up with long-term disability. […]

When your immune system becomes overactive and attacks the joint, that layer of cells becomes very thick, and it's infiltrated with a lot of other cells that release damaging chemicals, basically toxins into the joint. Where that tissue attaches to the bone, it eats away at the bone, and that can lead to some permanent damage. But also the chemicals that are released in the joint cause thinning of that white cartilage, the lining, so people get damaged bones which don't line up properly, don't let the joints function normally.

(Aplt. App. Vol. II at 603-05).

Dr. Bray explained that rheumatoid arthritis is "predominantly a disease of the joints." (Aplt. App. Vol. II at 604). Left untreated, he explained that the disease would be "progressive and devastating." (*Id.*)

During the fall of 2008, Ms. Scavetta continued to give immunizations for roughly three weeks. (Aplt. App. Vol. I at 331). However, to give an immunization, a pharmacist must have sufficient finger and thumb strength to plung the needle through the skin, into the muscle and then safely retract the needle. (Aplt. App. Vol. II at 846-47, 900).

Due to the force required to give immunizations, Ms. Scavetta began to suffer inflammation, pain and swelling in her fingers when she gave immunizations. (Aplt. App. Vol. I at 331). Further, she was unable to get the needle to safely retract which she understood to be an OSHA requirement. Because she was unable to administer immunizations safely, she became increasingly

concerned about the serious risks of contracting and spreading blood-borne

pathogens such as human immunodeficiency virus (HIV/AIDS), hepatitis and

staph infection that could result from a potential needle prick injury where those

risks and immunization practices are regulated by applicable federal laws and

OSHA regulations. (Aplt. App. Vol. I at 331-32).[2]

Ultimately, in September 2008, Dr. Vance Bray signed a medical note that

directed Ms. Scavetta not to not immunizations.  (Aplt. App. Vol. I at 334); (Aplt.

App. Vol. IV at 356).

C.     The Termination of Ms. Scavetta

Stephanie Bouknight serves as the Manager of Labor Relations at King

Soopers for all of the stores' employees. (Aplt. App. Vol. II at 706). She is

responsible, among other important duties, for the administration and enforcement

of disability issues under the ADA. (Id.). She makes the final determination on

accommodation and exemptions including determining whether a pharmacist

should be exempted from giving immunizations. (Aplt. App. Vol. II at 707, 716).

She explained that King Soopers follows an interactive process in assessing

---

[2]      "The Needlestick Safety and Prevention Act [(Pub. L. 106-430)] was signed into law on
November 6, 2000. *Because occupational exposure to bloodborne pathogens from accidental
sharps injuries in healthcare and other occupational settings continues to be a serious problem*,
Congress felt that a modification to OSHA's Bloodborne Pathogens Standard was appropriate
(29 CFR 1910.1030) to set forth in greater detail (and make more specific) OSHA's requirement
for employers to identify, evaluate, and implement safer medical devices."
https://www.osha.gov/needlesticks/needlefaq.html (emphasis added)

whether the company can make an accommodation for an employee with medical restrictions. (Aplt. App. Vol. II at 709).

In September 2009, King Soopers directed Ms. Scavetta to submit her 2008 medical note which restricted her from giving immunizations to the Labor Relations Department. (Aplt. App. Vol. I at 343-44). Accordingly, on September 4, 2009, Ms. Scavetta faxed her medical note to Labor Relations. (Aplt. App. Vol. IV at 1123-24). A few weeks later, on September 25, 2009, King Soopers advised Ms. Scavetta that she needed to complete the company's four-part disability form. (Aplt. App. Vol. I at 352).

Ms. Bouknight testified that she was aware that the company had received a medical note from Ms. Scavetta that was faxed on September 4, 2009 which should have triggered the interactive process. (Aplt. App. Vol. II at 711-12). Prior to terminating her employment, Ms. Bouknight testified that she "did not do the interactive process with Karen Scavetta, that's true." (Aplt. App. Vol. II at 791)

On September 28, 2009, Ms. Bouknight addressed Ms. Scavetta's arthritis and medical condition that prevented her from giving immunizations. She wrote in a September 28 email "Congratulations, so we are back to a medical reason?" After being advised that Ms. Scavetta had arthritis, Ms. Bouknight wrote "Jeff, you and the store manager are on the same page. **If she really wants to force the issue**

**it won't take long before we reach termination**." (Aplt. App. Vol. IV at 1125-27) (emphasis added).

As she had been directed to complete the four-part form, on October 2, 2009, Ms. Scavetta met with Dr. Bray. (Aplt. App. Vol. II at 662).  During the appointment, Dr. Bray administered a 52 joint assessment test and observed that Ms. Scavetta had pain, swelling and tenderness in 17 of her joints. (*Id.*).  At the conclusion of the appointment, Dr. Bray filled out the company's four-part form wherein he ordered that Ms. Scavetta "May not give flu or other injections." (Aplt. App. Vol. II at 663; Vol. IV at 1128-29)

After her doctor's appointment, at 10:45 a.m. on October 2, 2009,  Ms. Scavetta faxed the four-part completed form to Stephanie Bouknight in the Labor Relations Department.  (Aplt. App. Vol. II at 356-57, 792); Vol. IV at 1128-29). At 3:45 p.m. on October 2, Rich Comer in Labor Relations wrote to the store manager, Dwayne Haynes, "**Karen Scavetta will not be exempted from giving immunizations. Please communicate this to her and let her know that she is expected to give immunizations**." (Aplt. App. Vol. IV at 1130).  Mr. Haynes then forwarded the email to Steve Anger "**Here you go. Good luck**." (*Id.*).

After her exemption had been denied, on the afternoon of October 2 at approximately 4 p.m., Ms. Scavetta called and complained to Mr. Comer in the Labor Relations Department that rendering immunization was contrary to her

medical restrictions that had been issued by Dr. Bray. (Aplt. App. Vol. I at 357-64; Vol. IV at 1134).

Despite her complaints, the company proceeded to terminate her employment.  Specifically, on October 4, 2009, Ms. Scavetta reported for work to King Soopers' Store No. 122. (Aplt. App. Vol. I at 364-65).  At work, Steve Anger, a King Soopers' store manager, directed that she administer immunizations to those customers seeking them. (Aplt. App. Vol. I at 365).  Ms. Scavetta responded that she could not give the immunizations due to her medical condition and that her CPR card was expired. (*Id.*) She immediately contacted her union representative for assistance. (*Id.*). Despite her complaints, based on her refusal to administer immunizations, the company suspended and then terminated her employment on October 6, 2009.  (Aplt. App. Vol. I at 368-74; IV at 1131-32).

D.     The Major Life Activity Instruction

Prior to trial, Defendant filed "Defendant's Proposed Jury Instructions." (Aplt. App. Vol. I at 64).  This included "Defendant's Disputed Instruction J: Major Activities of Life," which provided that "Major activities of life include such activities as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working."  (Aplt. App. Vol. I at 12). This jury instruction was copied without modification from a model jury

instruction published in 2001. *Id.*; Kevin F. O'Malley, Jay E. Grenig & Hon.

William C. Lee, <u>Federal Jury Practice and Instructions</u>, § 172.35 (5th ed. 2001).

In the pre-trial objections, Plaintiff objected that Defendant's Disputed

Instruction J improperly restricted the definition of major life activities and that the

identification of the major life activities in the case should be determined by the

Court:

> Defendant's proposed instruction is fundamentally incomplete as it is
> based on the 2001 edition of the Federal Jury Practice and Instructions,
> and thus omits critical elements of governing federal law. . . . Further,
> "a major life activity also includes *the operation of a major bodily
> function, including but not limited to,* functions of the *immune system,*
> normal cell growth, digestive, bowel, bladder, neurological, brain,
> respiratory, circulatory, endocrine, and reproductive functions." 42
> U.S.C. §12102(2)(B).

> In cases of "actual" or "record of" disability cases, the questions of
> whether the Plaintiff has a physical or mental impairment within the
> meaning of the ADAAA, and *whether the identified affected activity is
> a "major life activity," are questions of law for the Court*. *See, e.g.,
> Doebele v. Sprint*, 342 F.3d 1117, 1129 (10th Cir. 2003); *Bristol v.
> Board of County Comm'rs*, 281 F.3d 1148, 1156-57 (10th Cir. 2002);
> FFA Instructions at 23, Notes on Use.

> In short, any instruction submitted to the jury must comport with the
> 2008 ADA Amendments Act.

(Aplt. App. Vol. I at 113) (emphasis added).

Further, in the first exhibit to her objections, Plaintiff submitted a proposed

revision to Defendant's Disputed Instruction J to which she would stipulate:

> "Major life activities" include such activities as caring for oneself,
> performing manual tasks, seeing, hearing, eating, sleeping, walking,

standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. *A major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system,* normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

**Authority:** Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, Federal Jury Practice and Instructions, § 172.35 (5th ed. 2001); The ADA Amendments Act of 2008, 42 U.S.C. § 12102(2)(B).

(Aplt. App. Vol. I at 146) (emphasis added).

On the final day of trial, the District Court tendered the proposed final jury instructions to the parties. (Aplt. App. Vol. I at 200, Vol. III at 1006). The District Court created its own jury instruction essentially merging Plaintiff's Disputed Instruction No.1, ADA – Disability Defined, *see* Aplt. App. Vol. I at 186, with Defendant's proposed instruction on major life activities:

Ms. Scavetta has a disability if she has a physical impairment that substantially limits one or more of her major life activities, such as *performing manual tasks, walking, standing, or working*.

(Aplt. App. Vol. I at 226) (emphasis added).

At the jury instruction conference, Plaintiff objected to the Court's modified instruction. (Aplt. App. Vol. III at 1117-18). Specifically, Plaintiff's Counsel (Ms. Lisa Sahli) objected that the instruction should "include the operation of major bodily functions such as the immune system or musculoskeletal system." *Id.*

The District Court explained that it had "limited the instruction to what [the judge] believed there was some evidence of, and that had to do with performing manual tasks, walking, standing, or working." *Id.*

Plaintiff's counsel responded that "there was evidence from Dr. Bray that *her musculoskeletal system is impaired* compared to most people in the population, because her joints are being attacked by her immune system, *and also that her immune system is impaired*." (Aplt. App. Vol. III at 1118) (emphasis added).

Further, Defendant's counsel also confirmed the accuracy of the medical evidence reflected in Plaintiff's objection by stating "*RA[rheumatoid arthritis] impairs those bodily functions*." (emphasis added). Despite the confirmation of the medical evidence, Defendant's counsel still countered that the major life activity instruction should not be expanded to include these major bodily functions. *Id.* The Court refused to consider Plaintiff's reply and denied Plaintiff's objection: "Ms. Sahli, you've made your record and you've made your objection.  It's overruled."  *Id.* (emphasis added).

Consequently, in the final jury instructions, the District Court failed to include any reference to major bodily functions, including the operation of the immune and musculoskeletal systems.  (Aplt. App. Vol. III at 1035).

## SUMMARY OF THE ARGUMENT

The ADAAA substantially expanded the definition of disability and major life activities. Specifically, under the ADAAA, and relevant regulations, major life activities include the operation of the immune system and musculoskeletal system. The District Court must determine and identify the major life activities in question, and then leave it to the jury to determine as a matter of fact whether the limitation on the litigant's major life activities amounts to the "substantial limitation" that makes it a disability under the ADAAA.

In this case, Plaintiff presented undisputed medical testimony that her rheumatoid arthritis substantially limited her major life activities, including the operation of her musculoskeletal system and the operation of her immune system. Plaintiff's counsel properly objected to the District Court's jury instruction that identified the major life activities in question because it did not include the operation of the immune system and the musculoskeletal system. The Defendant's counsel confirmed that Plaintiff's rheumatoid arthritis impaired the operation of her major bodily functions. Yet, contrary to the ADAAA, the District Court overruled Plaintiff's objection and submitted to the jury an instruction that omitted reference to the operation of the musculoskeletal system and of the immune system.

The District Court's improper jury instruction resulted in severe prejudice to the Plaintiff. The jury had to find that Plaintiff was disabled under the ADAAA

for her to prevail on her claim for the denial of a reasonable accommodation. Accordingly, Plaintiff suffered prejudice because the District Court improperly restricted the grounds on which the jury could conclude that Plaintiff was disabled.

This prejudice was severe because the Defendant's Labor Relations Manager had admitted at trial that Plaintiff had properly triggered the start of interactive process by providing the Defendant with her medical restrictions in two medical notes that prevented her from rendering immunizations. And, it was undisputed that the Defendant had refused to grant Plaintiff the exemption from providing immunizations. As these points were essentially undisputed, the heart of the case then turned on whether Plaintiff had established an impairment of a major life activity to prove she was disabled under the ADAAA. The Defendant's counsel argued forcefully in closing argument that Plaintiff was not disabled. Ultimately, the jury returned a verdict for the Defendant.

Similarly, as to her retaliation claim, Plaintiff had to show at trial that she had made a request in good faith for an accommodation under the ADAAA. The question of whether she proceeded in good faith includes the important question as to whether she could claim in good faith to be disabled. Again, because the jury had been wrongly instructed on the definition of major life activities, the Plaintiff was severely prejudiced in that determination.

For these reasons, a remand for retrial on both claims is necessary.

## LAW AND ARGUMENT

A. <u>Standard of Review</u>

The Tenth Circuit reviews *de novo* whether a district court erroneously instructed a jury on the applicable law.  *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009); *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1079 (10th Cir. 2010).  While the Tenth Circuit does not require perfection, it must be satisfied that the jury understood the issues to be resolved.  *Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009).  The Tenth Circuit evaluates the jury's understanding of the issues in light of the record as a whole.   *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1272 (10th Cir.1992).

The judgment of a district court "*must be reversed* if the jury might have based its verdict on the erroneously given instruction." *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012) (internal citations omitted) (emphasis added). Further, "jury instructions outlining the appropriate burdens of proof are almost always crucial to the outcome of the trial.'" *Id.*

B. <u>The District Court Committed Reversible Error Concerning the Reasonable Accommodation Claim Because it Failed to Properly Instruct the Jury on the Major Life Activities</u>

This case is governed by the Americans with Disabilities Act ("ADA") as Amended by the Americans with Disabilities Amendment Act ("ADAAA").  42

U.S.C. § 12101 *et seq.*; Pub. L. 110-325.  The ADAAA was effective January 1, 2009.  Pub. L. 110-325 § 8.

Under the ADAAA, a person is disabled if she suffers from "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment . . . ." 42 U.S.C. § 12102(1).

Congress enacted the ADAAA in import part to expand the definition of a disability, and the major life activities contained in that determination.  *See* 42 U.S.C. § 12102(4)(A); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1144 (10th Cir. 2011) (noting that "Congress amended the ADA in 2008 to correct what it viewed as an *overly restrictive* interpretation of the statute's terms that had been adopted by the Supreme Court.") (emphasis added).

"Generally speaking, the ADAAA was intended to remove certain constraints on the definition of 'disability'. . . ."  *Latham v. Bd. of Education of Albuquerque Public Schools*, Case No. 11-2217, July 12, 2012 (10th Cir. 2012) (unpublished) (citing *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1144 (10th Cir. 2011).  "The ADAAA amends the ADA in important respects, particularly with regard to the definition and construction of 'disability under the statute."  *Id.* (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 188 n.17 (3d Cir. 2009).

Critically, the ADAAA expands the definition of major life activities to include major bodily functions, including the operation of the immune system:

> (B) MAJOR BODILY FUNCTIONS.—For purposes of paragraph (1), *a major life activity also includes the operation of a major bodily function, including but not limited to*, functions of *the immune system*, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2).

Further, the ADAAA empowered the Equal Employment Opportunity Commission ("EEOC") to issue implementing regulations on the definition of disability. Pub. L. 113-36 § 6(a)(2).  Those regulations specifically confirm that rheumatoid arthritis impacts the musculoskeletal function:

> The link between particular impairments and various major bodily functions should not be difficult to identify.  *Because impairments, by definition, affect the functioning of body systems, they will generally affect major bodily functions*.  For example . . . *rheumatoid arthritis affects musculoskeletal functions*.

29 C.F.R. part 1630, Appx. (emphasis added).

The District Court must determine and identify the major life activities that are involved in the case, and then leave it to the jury to determine whether there is a "substantial limitation" constituting a disability.  *See*, *Bristol v. Bd. of County Comm'rs of Clear Creek*, 281 F.3d 1148, 1152 (10th Cir. 2002) (holding that Court

determines major life activities recognized by the ADA)[3]; *Doeble v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003) ("Whether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court. However, ascertaining whether the impairment substantially limits the major life activity is a factual question for the jury.") (internal citations omitted).

Here, Defendant's initially proposed in Defendant's Disputed Jury Instruction J that "Major activities of life include such activities as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working." (Aplt. App. Vol. I at 12).

In the pre-trial objections, Plaintiff objected that Defendant's Disputed Instruction J improperly failed to include "the operation of a major bodily function, including but not limited to, functions of the immune system. . ." (Aplt. App. Vol. I at 113) (citing 42 U.S.C. §12102(2)(B)). In addition, as part of the objection, Plaintiff's counsel proposed a revised instruction that would specifically include the operation of the major bodily functions as mandated by ADAAA. (Aplt. App. Vol. I at 146).

On the final day of trial, the Court provided its own judicially modified instruction on the definition of disability and identified the "major life activities,

---

[3] The Tenth Circuit has set forth this rule prior to the enactment of the ADAAA; Plaintiff has reviewed the ADAAA and subsequent case law, and is aware of nothing modifying the rule that the court should make a determination, rather than leaving it to the jury, as to what major life activities are in question.

such as performing manual tasks, walking, standing, or working." (Aplt. App. Vol. I at 226).

At the jury instruction conference, Plaintiff objected to the Court's proposed instruction. (Aplt. App. Vol. III at 1117-18). Specifically, Plaintiff's Counsel renewed her earlier objection that the instruction must "include the operation of major bodily functions such as the immune system or musculoskeletal system." *Id.*

The District Court observed that it had "limited the instruction to what [the judge] believed there was some evidence of, and that had to do with performing manual tasks, walking, standing, or working." *Id.*

Plaintiff's counsel responded that "there was evidence from Dr. Bray that her musculoskeletal system is impaired compared to most people in the population, because her joints are being attacked by her immune system, and also that her immune system is impaired." (Aplt. App. Vol. III at 1118) (emphasis added). During the final objection conference, Defendant's counsel confirmed that "RA [rheumatoid arthritis] impairs those bodily functions." *Id.* (emphasis added). Despite the undisputed evidence of the impairment of major bodily functions, the Court ruled: "you've made your record and you've made your objection. It's overruled." *Id.*

In overruling Plaintiff's objection, the District Court completely disregarded the expert medical testimony of Dr. Bray, rheumatologist, with whom Plaintiff had

treated for ten years.  Dr. Bray testified that Ms. Scavetta suffers from Rheumatoid Arthritis. (Aplt. App. Vol. I at 311, Vol. II at 613-14).  Dr. Bray explained that rheumatoid arthritis is a disorder of the immune system that attacks and potentially permanently damages the joints and other organs in the muscular skeletal system. (Aplt. App. Vol. II at 603-05).  Dr. Bray explained that rheumatoid arthritis is "predominantly a disease of the joints", and left untreated, can be "progressive and devastating." (Aplt. App. Vol. II at 605).

     In September 2008, Dr. Bray had issued a medical note prohibiting Ms. Scavetta from giving immunizations.  (Aplt. App. Vol. I at 331).  As she had been directed to complete the four-part form, on October 2, 2009, Ms. Scavetta met with Dr. Bray. (Aplt. App. Vol. II at 662).  During the appointment, Dr. Bray administered a 52 joint assessment test and observed that Ms. Scavetta had pain, swelling and tenderness in 17 of her joints. (Id.).  At the conclusion of the appointment, Dr. Bray filled out the company's four-part form wherein he ordered that Ms. Scavetta "May not give flu or other injections." (Aplt. App. Vol. II at 663; Vol. IV at 1128-29).

     A "judgment must be reversed if the jury might have based its verdict on an erroneously given instruction.'" *Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 867 (10th Cir. 2003) (emphasis added).  Further, "jury instructions outlining the

appropriate burdens of proof are almost always crucial to the outcome of the trial.'"

*Lederman v. Frontier Fire Prot., Inc.,* 685 F.3d 1151, 1154 (10th Cir. 2012).

The District Court instructed the jury that: (1) it should find against Plaintiff on her reasonable accommodation claim if she was not *disabled*; (2) Plaintiff was not disabled if her impairment did not substantially limit a major life activity; and (3) major life activities included standing, walking, working, and manual tasks. (Aplt. App. Vol. III at 1035).

Plaintiff incurred severe prejudice due to the Court's refusal to instruct the jury that the operation of major bodily functions such as the immune system and musculoskeletal system constitute major life activities. Ms. Bouknight, Defendant's Labor Relations Manager, had admitted at trial that Plaintiff had properly triggered the start of interactive process by providing the Defendant with a medical restriction that prevented her from rendering immunizations. (Aplt. App. Vol. II at 711-12).

The Defendant had refused to grant Plaintiff the requested accommodation from providing immunizations. As these points were essentially undisputed, the heart of the case turned on whether Plaintiff had established an impairment of a major life activity to prove she was disabled under the ADAAA. The Defendant's counsel argued forcefully in closing argument that Plaintiff was not disabled because she had not proven any restriction or limitation of any major life activity:

You heard the instructions already . . . the major life activities apparently implicated here are *walking, standing, and manual tasks* . . . . Walking, there is absolutely no restriction, no limitation.  Standing, no limitation.  Major life activities, there's not one identified.  Injections aren't a major life activity.  A major life activity are [sic] those things that are referenced here . . . ."

(Aplt. App. Vol. III at 1076).

Defendant's counsel further rebuked Ms. Scavetta for feigning her disability: "it's unfortunate, but people have a tendency to try and abuse this process and just come to us with doctor's notes and say: I don't want to do this job anymore; I don't want to work more than eight hours a day." *Id.*

 On this record, the District Court plainly committed reversible error in refusing to properly instruct the jury on the major life activities involved in this case.  Plaintiff therefore respectfully requests that this Court reverse the District Court's judgment against Plaintiff on her reasonable accommodation claim and remand for a new trial.

C.     The District Court Committed Reversible Error Concerning the Retaliation Claim Because it Failed to Properly Instruct the Jury on the Major Life Activities

This Court should further reverse the District Court's judgment on the retaliation claim.   The District Court identified that the retaliation claim that Plaintiff had to show she had "engaged in *conduct protected by the ADA*, including requesting a reasonable accommodation . . . or complaining in objective good faith

that the defendant violated the ADA." (Aplt. App. Vol. III at *Trial* at 1033) (emphasis added).

Clearly, in reaching that determination, the jury had to determine whether Plaintiff actually qualified as disabled to determine whether she engaged in conduct protected by the ADA. As previously noted, Defense Counsel argued aggressively at closing that Plaintiff not disabled, that she was not engaging in protected conduct, and that she did not proceed in good faith.

The standard is the same here as above: a "judgment must be reversed if the jury might have based its verdict on an erroneously given instruction.'" *Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 867 (10th Cir. 2003) (emphasis added). In this case, the jury received an instruction on major life activities that was contrary to law and therefore likely concluded that Plaintiff was not disabled under the ADAAA. At a bare minimum, Plaintiff incurred severe prejudice as the Court failed to properly instruct the jury concerning the critical burden of proof, namely definition of major life activities.

Accordingly, the jury likely "based its verdict on an erroneously given jury instruction" and therefore "the judgment must be reversed." Plaintiff therefore respectfully requests that this Court reverse the District Court's judgment against Plaintiff on her retaliation claim and remand for a new trial.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Because of the importance of this case concerning the major life activities determination under the ADAAA, Plaintiff's Counsel believes oral argument may be helpful to this Court.

## CONCLUSION

The judgment against Plaintiff should be reversed, and her case remanded to the District Court for a new trial on both the failure to accommodate and retaliation claims.

Respectfully submitted,

Marc L. Schatten
Schatten Law Firm

By:     */S/ Marc L. Schatten*
Marc L. Schatten (Digital)
Plaintiff's Counsel
1439 Court Place
Denver, CO 80202
303-388-3200
mls@denverlawfirm.com

## Certificate of Compliance

**Section 1. Word count**

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains 6575 words.

Complete one of the following:

- ✓ I relied on my word processor to obtain the count and it is Microsoft Office Word Version 2010.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonably inquiry.

By:    */S/ Marc L Schatten*
       Marc L. Schatten (digital)

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing APPELLANT'S OPENING BRIEF, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the Webroot and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made.


By:    */S/ Marc L. Schatten*
         Marc L. Schatten (Digital)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **APPELLANT'S OPENING BRIEF** was furnished through (ECF) electronic service to the following on this the 6th day of January, 2014:

Brooke A. Colaizzi
Raymond M. Deeny
633 17th St., Suite 3000
Denver, CO 80202
bcolaizzi@shermanhoward.com


_/S/ Marc L. Schatten_
Marc L. Schatten (Digital)