No. 13-1311

In the United States Court of Appeals
for the Tenth Circuit

Karen Scavetta,
    Plaintiff-Appellant,
v.

Dillon Companies, Inc., d/b/a King Soopers, Inc.,
    Defendant-Appellee.

On Appeal from the United States District Court
for the District of Colorado (1:10-cv-2986),
the Hon. William J. Martinez, Presiding

Equal Employment Opportunity Commission's
Brief as Amicus Curiae Supporting Appellant

P. David Lopez
  General Counsel

Lorraine C. Davis
  Acting Associate
  General Counsel

Jennifer S. Goldstein
  Acting Assistant
  General Counsel

Paul D. Ramshaw
    Attorney

Equal Employment
    Opportunity Commission
Office of General Counsel
  131 M St., NE, Room 5SW18K
  Washington, DC 20507
Paul.Ramshaw@eeoc.gov
(202) 663-4737

# Table of Contents

Table of Authorities...................................................................ii

Statement of Interest ...............................................................1

Statement of the Issues...........................................................1

Argument..................................................................................2

    I.  The district court erred by refusing to instruct the jury that
the term "major life activity" includes the operation of major
bodily functions.....................................................................2

    II.  The district court erred by instructing the jury that it should
find for King Soopers if the company made good-faith efforts to
provide a reasonable accommodation.................................12

Conclusion .............................................................................16

Certificate of Compliance with Rule 32 ...............................17

Certificate About Paper Copies.............................................17

Certificate on Privacy Redactions.........................................18

Certificate on Virus Scanning...............................................18

Certificate of Service .............................................................19

i

# Table of Authorities

Page(s)

## Cases

*Anixter v. Home-Stake Production Co.,* 77 F.3d 1215 (10th Cir. 1996)................................................................................5

*Brownlow v. Aman*, 740 F.2d 1476 (10th Cir. 1984) ............................5, 8

*Culotta v. Sodexo Remote Sites Partnership*, 864 F. Supp. 2d 466 (E.D. La. 2012) ...............................................................10

*Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999) ....................................13

*Dodoo v. Seagate Technology, Inc.*, 235 F.3d 522 (10th Cir. 2000) ..........4

*EEOC v. Convergys Customer Management Group, Inc.*, 491 F.3d 790 (8th Cir. 2007) ...............................................................14

*EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241 (10th Cir. 1999) ...........14

*Garner v. Chevron Phillips Chemical Co., L.P.*, 834 F. Supp. 2d 528 (S.D. Tex. 2011)...............................................................10

*Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170 (7th Cir. 2013) (per curiam)...............................................................3, 11

*Hallberg v. Brasher*, 679 F.2d 751 (8th Cir. 1982) ...................................8

*Horgan v. Simmons*, 704 F. Supp. 2d 814 (N.D. Ill. 2010) .................3, 11

*Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545 (10th Cir. 1999) ..............12

*Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F. Supp. 2d 643 (S.D. Tex. 2011)..............................................................3, 11

*Perlmutter v. United Sates Gypsom Co.*, 4 F.3d 864 (10th Cir. 1983)..................................................................8

*Picard v. St. Tammany Parish Hospital*, 611 F. Supp. 2d 608 (E.D. La. 2009) ................................................................ 14

*Quint v. A.E. Staley Manufacturing Co.*, 172 F.3d 1 (1st Cir. 1999) ..... 13

*Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215 (10th Cir. 1999) ................................................................ 15

*Townsend v. Lumbermens Mutual Casualty Co.*, 294 F.3d 1232 (10th Cir. 2002) ........................................................ 6–7

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) ................................. 12

*Whittington v. Nordam Group, Inc.*, 429 F.3d 986 (10th Cir. 2005) .... 4–5

## Statutes

Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*........... *passim*

ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 353 (2008) .................................................................. *passim*

Civil Rights Act of 1991, Pub. L. 102-166, § 102 ................................. 14

42 U.S.C. § 1981a ........................................................... 13–15

42 U.S.C. § 1981a(a)(3)...................................................... 14–15

42 U.S.C. § 12101(2)(B) ........................................................ 2

42 U.S.C. § 12101 note ........................................................ 10

42 U.S.C. § 12102(2)(B) ........................................................ 9

42 U.S.C. § 12102(4)(A) ........................................................ 9

42 U.S.C. § 12102(4)(E)(i)...................................................... 9

42 U.S.C. § 12112(b)(5)........................................................ 12

42 U.S.C. § 12117(a)........................................................... 1

## Rules and Regulations

Fed. R. App. P. 29(a)..................................................................... 1

29 C.F.R. § 1630.2(j)(1)............................................................ 10

29 C.F.R. App. § 1630.2(i) ....................................................... 10

29 C.F.R. App. § 1630.2(g)....................................................... 10

## Other Authorities

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) ..................... 6

## Statement of Interest

Congress directed the Equal Employment Opportunity Commission to spearhead enforcement of Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, by investigating and trying to resolve the charges of discrimination it receives and by litigating cases alleging violations of the statute or requiring its interpretation. 42 U.S.C. § 12117(a) (giving the EEOC the same "powers" and "remedies" given the agency in the relevant sections of Title VII). This case presents questions about two important instructions the district court gave the jury: one defining the term "disability" and the other discussing the effect of a good-faith defense. These issues are relevant in many of the lawsuits brought to enforce the ADA, including those brought by the Commission. The Commission therefore, pursuant to Fed. R. App. P. 29(a), offers its views.

## Statement of the Issues

1. Did the district court err by refusing to instruct the jury that the term "major life activity" includes major bodily functions?

2. Did the district court err by instructing the jury that it should find for King Soopers if the company made good-faith efforts to identify a reasonable accommodation?

## Argument

## I. The district court erred by refusing to instruct the jury that the term "major life activity" includes the operation of major bodily functions.

Under the ADA Amendments Act ("ADAAA"), which was in effect in October 2009, when King Soopers fired Scavetta,[1] the term "major life activity" includes "the operation of a major bodily function," including the immune system. 42 U.S.C. § 12101(2)(B).[2] This amendment significantly broadened the definition of "disability." An ADAAA plaintiff can show a disability with evidence that he or she has an impairment that restricts the operation of a major bodily function, such

---

[1] Pub. L. No. 110-325, § 8, 122 Stat. 353, 355 (2008) (took effect Jan. 1,

[2] Section 12101(2)(B) states:

> For purposes of paragraph (1) [defining "disability"], a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

2

as the cardiovascular system or the immune system. *See, e.g.*, *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172–73 (7th Cir. 2013) (per curiam) (high blood pressure is a disorder of the circulatory system and therefore a disability even if the plaintiff's disorder is controlled well by medication); *Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F. Supp. 2d 643, 651 (S.D. Tex. 2011) (brain tumor is a disability because it affects normal cell growth); *Horgan v. Simmons*, 704 F. Supp. 2d 814, 818–19 (N.D. Ill. 2010) (HIV-positive status is a disability because it prevents normal functioning of immune system).

Scavetta offered evidence that her rheumatoid arthritis alters the functioning of her immune and musculoskeletal systems, generating toxins that damage the bones and cartilage in her joints. 2 Aplt. App. at 603–05, 611, 614–16. She therefore asked the court to instruct the jury that the term "major life activity" includes the operation of major bodily functions such as the immune system. 3 Aplt. App. at 1017–18. The court declined to do so, 3 Aplt. App. at 1017–18, even though the evidence that her rheumatoid arthritis affects the operation of her immune and musculoskeletal systems was arguably stronger than the

3

evidence that it substantially limits her in the externally observable actions to which the district court directed the jury's attention. The district court instead instructed the jury only that Scavetta "has a disability if she has a physical impairment that substantially limits one or more of her major life activities, such as performing manual tasks, walking, standing, or working." 3 Aplt. App. at 1035.

This Court reviews the jury instructions de novo and as a whole and reverses only if the instructions failed to give the jury a correct picture of the law and the appellant shows that this error might have caused the adverse verdict. *Whittington v. Nordam Grp., Inc.*, 429 F.3d 986, 996, 998 (10th Cir. 2005). The Court reviews a ruling rejecting a proposed instruction for an abuse of discretion, *Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 529 (10th Cir. 2000), but it reviews de novo any question of law, including whether the instructions correctly conveyed the governing law and whether the appellant introduced sufficient evidence to support the requested instruction, the issue at stake here. *Whittington*, 429 F.3d at 996; *Brownlow v. Aman*, 740 F.2d 1476, 1498 (10th Cir. 1984).

Reversal is warranted here because the challenged instruction gave an incomplete and misleading definition of "disability," and the jury might have found for King Soopers after deciding, based on that misleading definition, that Scavetta failed to show she was substantially limited in a major life activity of the sort described in the instruction given. *See Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215, 1229 (10th Cir. 1996) ("Generally, where a jury has returned a general verdict and one theory of liability upon which the verdict may have rested was erroneous, the verdict cannot stand because one cannot determine whether the jury relied on the improper ground.").

A reasonable juror hearing the district court's instruction would likely conclude that the only types of major life activities that are relevant to the ADA's definition of "disability" are those that are externally observable, like walking, lifting, or standing up. The word "activity" means "the quality or state of being active,"[3] and is usually used to refer to voluntary, externally observable actions. A person asked

---

[3] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) 22.

5

to list the activities she engaged in on a certain day ordinarily responds by reporting voluntary, observable actions like: "I wrote a brief," "I flew to New York," "I taught a class," etc. She is unlikely to include internal bodily functions like: "My heart pumped blood," "My white cells fought infection," etc. The district court reinforced this ordinary understanding of the word "activity" by listing as examples of major life activities only externally observable actions: performing manual tasks, walking, standing, and working. This usual understanding of "activity" does not capture the breadth of the term "major life activity" as Congress has redefined it in the ADAAA.

This Court's decision in *Townsend v. Lumbermens Mutual Casualty Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002), is useful in understanding why the district court's refusal to instruct the jury about major bodily functions is reversible error. The *Townsend* Court held that when the plaintiff has offered evidence of pretext, the district court must instruct the jury that it may, if it believes that evidence, infer that the employer acted with discriminatory intent. The *Townsend* court reversed a judgment on a verdict for the employer because it was concerned that

6

the jury might not have realized—without the court's imprimatur—that it is permissible to infer discrimination from pretext. *Id.* at 1236–43. If a pretext instruction was necessary in *Townsend, a fortiori* an instruction on major bodily functions was necessary here. In *Townsend* the link between pretext and discrimination was merely a permissible inference. Here the instruction that Scavetta requested and the district court rejected was grounded in the plain text of the ADA Amendments Act: a change in the law that Congress believed was necessary to properly enforce the ADA.

The district court rejected Scavetta's proposed "major bodily functions" instruction not because it deemed the instruction legally erroneous, but because it ruled that Scavetta had failed to offer sufficient evidence to support the instruction. 3 Aplt. App. at 1017–18. That is of course a proper ground for rejecting a proposed instruction. *See Brownlow*, 740 F.2d at 1490 ("Only where there is sufficient evidence to support an issue or theory is the party offering an instruction entitled to have the instruction given."). The district court's rejection of the proposed instruction here, however, was erroneous

because Scavetta offered sufficient evidence to support the instruction. In deciding whether the evidence was sufficient to support Scavetta's proposed instruction, the district court was bound to consider the evidence "in the light most favorable to the party offering the instruction, giving it 'the benefit of all favorable inferences reasonably deducible therefrom.'" *Hallberg v. Brasher*, 679 F.2d 751, 757 n.6 (8th Cir. 1982). Evidence can be sufficient to support a requested instruction even if it is "not . . . by any means compelling." *Perlmutter v. U.S. Gypsom Co.*, 4 F.3d 864, 872 (10th Cir. 1983).

Dr. Vance Bray was Scavetta's treating rheumatologist. 1 Aplt. App. at 333. He testified at trial as an accepted expert in rheumatology and internal medicine. 2 Aplt. App. at 603. Dr. Bray testified that Scavetta has rheumatoid arthritis, a disorder of the immune system that is usually progressive and incurable, with a significant chance of eventually causing total disability. 2 Aplt. App. at 603–04, 614–16. In a person with rheumatoid arthritis, the lining of certain joints becomes thicker and releases toxic chemicals that damage the bone tissue and destroy the cartilage. 2 Aplt. App. at 605. In addition, the person's

8

immune system, busy attacking her joints, is often correspondingly less effective at fighting infection. 2 Aplt. App. at 611.

Under the amended ADA, this evidence was sufficient to support Scavetta's proposed instruction. The act lists the immune system as one of the major bodily functions whose operation constitutes a major life activity. 42 U.S.C. § 12102(2)(B). The statute requires courts to assess whether the plaintiff's impairment would substantially limit the operation of a major bodily function if the person took no medication, and to construe the definition of "disability" "in favor of broad coverage . . . to the maximum extent permitted by the [law's] terms." 42 U.S.C. § 12102(4)(A) & (4)(E)(i). Moreover, Congress stated that its purpose in amending the ADA as it did, including by providing that the operation of a major bodily function is a major life activity, was to define "disability" in a way that "should not demand extensive analysis," and to redirect ADA litigation so that the "primary object of attention" in such cases is not on whether the impairment is a disability, but on "whether entities covered under the ADA have complied with their obligations." Pub. L. 110-325, § 2(b)(5), *codified at* 42 U.S.C. § 12101

9

note; 29 C.F.R. § 1630.2(j)(1)(iii) (quoting purpose); *see also* 29 C.F.R. App. § 1630.2(g), ¶¶ 3–4 (quoting legislative history).

A reasonable juror could find, on the basis of Dr. Bray's expert testimony, that Scavetta has an impairment or disorder that substantially limits the operation of her immune and musculoskeletal systems "as compared to most people in the general population."[4] 29 C.F.R. § 1630.2(j)(1)(ii); *see* 29 C.F.R. App. § 1630.2(i) ("Because impairments, by definition, affect the functioning of body systems, they will generally affect major bodily functions. For example, . . . rheumatoid arthritis affects musculoskeletal functions."). The district court therefore erred in refusing to instruct the jury that the statutory term "major life activity" includes the operation of a person's major bodily functions. *See, e.g.*, *Gogos*, 737 F.3d at 1172–73 (high blood

---

[4] "'[S]ubstantially limits' is not meant to be a demanding standard . . . ." *Culotta v. Sodexo Remote Sites P'ship*, 864 F. Supp. 2d 466, 475 (E.D. La. 2012) (quoting 29 C.F.R. § 1630.2(j)(1)(i)). It does not mean that the impairment must "prevent or significantly restrict the individual from performing a major life activity." *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 539 (S.D. Tex. 2011) (restating 29 C.F.R. § 1630.2(j)(1)(ii)).

pressure is a disorder of the circulatory system and therefore a disability); *Meinelt*, 787 F. Supp. 2d at 651 (brain tumor is a disability because it affects normal cell growth); *Horgan*, 704 F. Supp. 2d at 818–19 (HIV-positive status is a disability because it prevents normal functioning of immune system).

## II.  The district court erred by instructing the jury that it should find for King Soopers if the company made good-faith efforts to provide a reasonable accommodation.[5]

An employer violates the ADA if it fails to

> mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5). Thus when a plaintiff alleges failure to

accommodate, the statute provides an explicit defense: that the

proposed accommodation[s] would impose an undue hardship. *See US*

*Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002) (once plaintiff makes

reasonable-accommodation showing, "the defendant/employer then

must show special (typically case-specific) circumstances that

demonstrate undue hardship in the particular circumstances"). But the

---

[5]  Scavetta apparently failed to object to this instruction on this ground in the district court, so this Court would review the instruction only for plain error. *See Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 553 (10th Cir. 1999).  It also appears that Scavetta has not made an argument about this instruction on appeal.  The Commission therefore addresses the issue in this brief only to urge this Court not to endorse the district court's erroneous good faith instruction.

ADA nowhere says that an employer is not liable for failing to provide a reasonable accommodation as long as it made good-faith efforts to provide one. Despite the absence of any such good-faith defense in the statute, the district court instructed the jury to enter a verdict for King Soopers if it found that the company "made a good faith effort in consultation with [Scavetta] to identify and make a reasonable accommodation that would provide [her] with an equally effective opportunity at the workplace." 3 Aplt. App. at 1031–32

An employer's good-faith efforts to accommodate the plaintiff are a defense only to an award of compensatory or punitive damages, not a defense to liability, and the defense stems from 42 U.S.C. § 1981a, not from the ADA. As enacted in 1990, the ADA allowed plaintiffs to seek the same equitable relief that was then available under Title VII: reinstatement, an injunction, and/or back and front pay. *See, e.g.*, *Davoll v. Webb*, 194 F.3d 1116, 1143 n.19 (10th Cir. 1999) (ADA authorizes reinstatement or front pay); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 15, 18 (1st Cir. 1999) (ADA permits reinstatement and back pay). In 1991, Congress allowed certain Title VII and ADA plaintiffs to

13

seek in addition compensatory and punitive damages. *See EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1244 (10th Cir. 1999); Civil Rights Act of 1991, Pub. L. 102-166, § 102, codified at 42 U.S.C. § 1981a. Subsection (a)(3) of § 1981a, however, provides that when an ADA plaintiff alleges failure to accommodate, "damages may not be awarded under this section where the covered entity demonstrates good faith efforts . . . to identify and make a reasonable accommodation . . . ." 42 U.S.C. § 1981a(a)(3). Thus ADA plaintiffs who prove an unlawful failure to accommodate are barred from receiving compensatory or punitive damages if the employer proves it made good-faith efforts to identify and provide an accommodation. *See, e.g.*, *EEOC v. Convergys Customer Mgmt. Group, Inc.*, 491 F.3d 790, 797 (8th Cir. 2007) (employer's good faith efforts are defense to award of compensatory damages); *Picard v. St. Tammany Parish Hosp.*, 611 F. Supp. 2d 608, 621 (E.D. La. 2009) ("employer that 'demonstrates good faith efforts' . . . is shielded from liability for compensatory and punitive damages").

But § 1981a(a)(3) provides a defense only with respect to damages awarded under § 1981a ("damages may not be awarded *under this*

*section*"), not to the relief that was already available under the ADA before the enactment of § 1981a. *Cf. Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1222–23 (10th Cir. 1999) (good-faith-efforts defense in § 1981a(a)(3) applies only to the damages allowed in § 1981a(a)(1)–(2)). Accordingly, the district court erred by instructing the jury that King Soopers' alleged good-faith efforts to identify and provide a reasonable accommodation would relieve the company of all liability for violating the ADA and justify a verdict in the company's favor.

## Conclusion

The Commission respectfully asks this Court to vacate the district court's judgment in King Soopers' favor because of the district court's prejudicial error in defining "disability," and to refrain from endorsing the district court's instruction that an employer's good-faith efforts to identify and provide a reasonable accommodation relieve it of any liability for violating the ADA.

Respectfully submitted,

P. David Lopez
   General Counsel

Lorraine C. Davis
   Acting Associate
   General Counsel

Jennifer S. Goldstein
   Acting Assistant
   General Counsel

s/ Paul D. Ramshaw

Paul D. Ramshaw
   Attorney

Equal Employment
   Opportunity Commission
Office of General Counsel
   131 M St., NE, Room 5SW18K
   Washington, DC 20507
Paul.Ramshaw@eeoc.gov
(202) 663-4737

16

## Certificate of Compliance with Rule 32

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,751 words, exclusive of the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2. This brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using a 14-point Century Schoolbook font.

s/  Paul D. Ramshaw

## Certificate About Paper Copies

I certify that the corrected paper copies that the court will receive on Wednesday, January 15, will be exact copies of the .pdf file I am filing today.

s/ Paul D. Ramshaw

17

**Certificate on Privacy Redactions**

I certify that I have made all the privacy redactions required by

Fed. R. App. P. 25(a)(5) and by local rule 25.5.

s/ Paul D. Ramshaw

January 13, 2014

**Certificate on Virus Scanning**

I certify that I have scanned the .pdf file of this brief for viruses

using Trend Micro OfficeScan version 10.6.4162, service pack 3, and the

brief is virus-free.

s/ Paul D. Ramshaw

January 13, 2014

## Certificate of Service

I certify that the following counsel will be served with an electronic copy of this brief today via ECF:

Brooke A. Colaizzi
Raymond M. Deeny
Sherman & Howard L.L.C.
633 17th St., Suite 3000
Denver, CO  80202


Marc L. Schatten
The Schatten Law Firm
1439 Court Pl.
Denver, CO  80202


s/ Paul D. Ramshaw

January 13, 2014